UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                               )
DAVID LAWRENCE BRUCE,          )
                               )
          Plaintiff,           )
                               )
     v.                        )  Civil Action No. 04-933 (RWR)
                               )
CONSULATE OF VENEZUELA,        )
                               )
          Defendant.           )
_____)

MEMORANDUM OPINION

*Pro se* plaintiff David Bruce brought this action against the Consulate of Venezuela[1] alleging that the Consulate of Venezuela used plaintiff's name in a letter.  Because the court lacks subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA") of 1976, 28 U.S.C. §§ 1330, 1602-1611 (2000), the court will dismiss the plaintiff's complaint *sua sponte*.

BACKGROUND

Plaintiff, a resident of Washington, D.C., alleges in his nineteen-line complaint simply that the Consulate of Venezuela "used [his] name in a letter."  (Compl. at 1.)  The complaint cites to the privileges and immunities clause of Article IV of the United States Constitution, as well as Amendments One through

_____
[1] Although plaintiff names as defendant the Consulate of Venezuela, plaintiff appears to mean the Embassy of Venezuela. He claims to have served process on the defendant at the address of the Embassy of Venezuela in Washington, D.C.

- 2 -

Nine, Thirteen and Fourteen; civil rights statutes, 42 U.S.C.
§§ 1981, 1982, 1983, 1985, and 1986; and 18 U.S.C. §§ 2510, et
seq., which govern the interception of wire and electronic
communications.   The complaint also invokes federal question,
diversity and civil rights jurisdiction under 28 U.S.C. §§ 1331,
1332, and 1343, respectively.   Plaintiff seeks damages in the
amount of $5 million.   (See Compl. at 1-2.)

     Plaintiff has also submitted several filings in addition to
his complaint, which appear to be intended to elaborate upon his
claim.   As best as can be discerned from these filings, plaintiff
alleges that a Venezuelan employee at the Consulate of Venezuela
wrote a letter using plaintiff's name, without his consent, that
somehow related to plaintiff traveling to Thailand.[2]   (See Pl.'s
Special Damages Pleading at 4-5; Mot. for Subpoena at 1, 3.)
Plaintiff also suggests that defendant's use of his name in a
letter violated plaintiff's "interests of privacy."   (Mot. of Pl.
Pleading, Ex. D.)   Plaintiff further alludes to defendant's plans
"to steal [his] money" and defendant's involvement in an alleged
"conspiracy agreement to steal [the] money he was using for
religious Christian ministry purposes in Thailand . . . ."

---

     [2]   Plaintiff states that defendant "is attacking and denying
[him] . . . associational rights with Thai people . . . Thailand
and interstate travel into Thailand."   (Pl.'s Special Damages
Pleading at 4.)   He also states that he "should not be stopped,
booked, nor disallowed entrance to any foreign country on account
of Defendant's inconsiderations [sic], including being denied a
Visa and entry into Thailand."   (Id. at 5.)

- 3 -

(Pl.'s Special Damages Pleading at 6.)  Plaintiff also alleges that the defendant engaged in conduct which resulted in "actual hurt, harm, injury, [and] death" to plaintiff's family members. (Mot. of Pl.'s Pleading at 2.)  Specifically, plaintiff alleges that the defendant reached a "mutual agreement" with an American named John Herrick Lawson, without identifying the nature of that agreement.  (See id. at ¶ 1.)  Thereafter, Lawson allegedly traveled from the United States to Bangkok, Thailand where he murdered plaintiff's youngest son (id. at ¶¶ 2, 5-6), sodomized and raped plaintiff's three-and-a-half-year old daughter (id. at ¶ 7), and murdered plaintiff's wife and son.[3]  (Id. at ¶ 9.)

## DISCUSSION

Before a court may adjudicate the merits of a plaintiff's case, the court must determine whether it has subject matter jurisdiction to entertain the case.  Nurse v. Sec'y of the Air Force, 231 F. Supp. 2d 323, 327 (D.D.C. 2002) (citing Ex Parte McCardle, 74 U.S. 506 (1868)).  Whether a court has subject matter jurisdiction over a case is an issue which may be raised by the court, and the case may be dismissed sua sponte upon the determination that subject matter jurisdiction is lacking. Akinseye v. District of Columbia, 339 F.3d 970, 971 (D.C. Cir.

---

[3]  Plaintiff alleges countless other claims related to the death of his children and their mothers, which implicate other persons who, like Lawson, are not parties to this suit.  (See generally, Mot. of Pl.'s Pleading.)

- 4 -

2003); <u>Houston Bus. Journal, Inc. v. Office of the Comptroller of
the Currency</u>, 86 F.3d 1208, 1211 (D.C. Cir. 1996) (citing <u>Ins.
Corp. of Ir. v. Compagnie des Bauxites de Guinée</u>, 456 U.S. 694,
702 (1982)); <u>see, e.g.</u>, <u>Rafeedie v. I.N.S.</u>, 880 F.2d 506, 536
(D.C. Cir. 1989) (Silberman, J., dissenting) ("The Supreme Court
has often stated that a court is obliged to reach questions of
subject matter jurisdiction *sua sponte*, and may undertake review
of the merits of a dispute only if the court is satisfied such
jurisdiction exists."); <u>Skeen v. Federative Republic of Brazil</u>,
566 F. Supp. 1414, 1415-18 (D.D.C. 1983) (taking up subject
matter jurisdiction over 28 U.S.C. § 1605(a)(5) claim *sua
sponte*).

When determining the existence of subject matter
jurisdiction, the court is not limited to the jurisdictional
statutes identified in the complaint.  <u>Gerritsen v. de la Madrid
Hurtado</u>, 819 F.2d 1511, 1515 (9th Cir. 1987).  "'[T]he court may
sustain jurisdiction when an examination of the entire complaint
reveals a proper basis for assuming jurisdiction other than one
that has been improperly asserted . . . .'"  <u>Id.</u> (quoting 5 C.
Wright & A. Miller, Federal Practice and Procedure § 1206
(1969)).

Absent any prior international agreement conferring
jurisdiction over a foreign state, the FSIA provides "the sole
basis for obtaining jurisdiction over a foreign state in federal

court . . . ."  <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 434 (1989); <u>Princz v. Federal Republic of Germany</u>, 26 F.3d 1166, 1169 (D.C. Cir. 1994).  "Under the FSIA, a foreign state is immune from the jurisdiction of our courts unless certain statutory exceptions are met."  <u>El-Hadad v. United Arab Emirates</u>, 216 F.3d 29, 31 (D.C. Cir. 2000); <u>see also</u> <u>Reiss v. Societe Centrale Du Groupe Des Assurances Nationales</u>, 235 F.3d 738, 746-47 (2d Cir. 2000); <u>Princz</u>, 26 F.3d at 1171.  The general rule of foreign sovereign immunity is overcome if a case falls within one of the exceptions to immunity under 28 U.S.C. § 1605. <u>Persinger v. Islamic Republic of Iran</u>, 729 F.2d 835, 838 (D.C. Cir. 1984).  Plaintiff bears the initial burden under the FSIA to show that an exception applies.  <u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F.2d 1012, 1016 (2d Cir. 1993).

When an exception applies, the foreign state will lose its immunity and "[t]he district courts [will] have original jurisdiction without regard to [the] amount in controversy . . . ."  28 U.S.C. § 1330(a); <u>Argentine Republic</u>, 488 U.S. at 434.  Additionally, the foreign state may be subject to the court's jurisdiction if there is an international agreement enacted prior to the FSIA with which FSIA immunity would expressly conflict.  <u>See</u> 28 U.S.C. § 1604; <u>Von Dardel v. Union of Soviet Socialist Republics</u>, 736 F. Supp. 1, 5 (D.D.C. 1990); <u>see also</u> <u>Argentine Republic</u>, 488 U.S. at 442.

- 6 -

It is undisputed that Venezuela is a foreign state under the
FSIA.  See 28 U.S.C. § 1603; cf. Shakour v. Federal Republic of
Germany, 199 F. Supp. 2d 8, 13 (E.D.N.Y. 2002) (finding Germany
to be undisputedly a foreign state under the FSIA); Puente v.
Spanish Nat'l State, 116 F.2d 43, 45 (2d Cir. 1940)(noting that
"[c]ourts take judicial notice of the sovereign character of a
defendant").  The Embassy of Venezuela, as a separate legal
entity, also qualifies as a "foreign state" under the FSIA.[4]  See
Joseph v. Office of Consulate Gen. of Nigeria, 830 F.2d 1018,
1021 (9th Cir. 1987) (finding that the Consulate of Nigeria
qualified as a "foreign state" under the FSIA); Gerritsen, 819
F.2d at 1517 (finding that "the defendant Mexican Consulate falls
within the definition of a foreign state because it is 'a
separate legal person' that is 'an organ of a foreign state or
political subdivision thereof' and that is 'neither a citizen of
a state of the United States . . . nor created under the laws of
a third country'" (quoting 28 U.S.C. § 1603(b))).

While plaintiff does not allege that this court may invoke
jurisdiction over the defendant pursuant to an exception in the
FSIA,[5] plaintiff's pro se filings will be construed liberally to

---

[4] Plaintiff also alleges that defendant is a "foreign
entity." (Compl. at 1; Pl.'s Mot. to Admit Evid. Ex. F).

[5] Nor does plaintiff cite to any international agreement
which confers upon the court subject matter jurisdiction over his
complaint.

determine whether his allegations show that an exception is applicable.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (explaining that *pro se* complaints are held to less stringent standards than are formal pleadings drafted by lawyers); Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (holding that courts must construe *pro se* filings liberally, and that the district court should have read all of the *pro se* plaintiff's filings together before dismissing the case for lack of subject matter jurisdiction, but also noting that a court need not "cull through every filing of a *pro se* litigant to preserve a defective complaint").

I.   WAIVER EXCEPTION, 28 U.S.C. § 1605(a)(1)

The first exception to foreign sovereign immunity under § 1605 provides, in relevant part, that a foreign state will "not be immune from the jurisdiction of the courts of the United States . . . in any case in which the foreign state has waived its immunity either explicitly or by implication . . . ."  28 U.S.C. § 1605(a)(1).

"[A]n implied waiver depends upon the foreign government's having at some point indicated its amenability to suit."  Princz, 26 F.3d at 1174; see, e.g., Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990)("'[C]ourts rarely find that a nation has waived its sovereign immunity, particularly with respect to suits brought by third parties,

- 8 -

without strong evidence that this is what the foreign state intended.'") (quoting Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 377 (7th Cir. 1985)).  A foreign state implicitly waives immunity where, for example, it (1) fails to raise the sovereign immunity defense in a responsive pleading, (2) agrees to arbitrate the case outside of the United States, or (3) agrees to abide by the laws of a specific country in resolving a contract.  H.R. Rep. No. 94-1487, at 8 (1976), as reprinted in 1976 U.S.C.C.A.N. 6604, 6617.

Here, plaintiff has not suggested or shown in his complaint or any of his subsequent filings that defendant has waived, explicitly or implicitly, its immunity.  Defendant has not responded to plaintiff's complaint or any of his subsequent filings, and otherwise has done nothing in this case that constitutes an explicit waiver of its immunity.  Nor does the fact that defendant has filed nothing in and of itself result in an implicit waiver of immunity.  See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274, 277-78 (2d Cir. 1984) (affirming the lower court's conclusion that Compania had not waived its sovereign immunity although it never filed a pleading in response to Canadian Overseas' complaint).

II.  COMMERCIAL ACTIVITY EXCEPTION, 28 U.S.C. § 1605(a)(2)

The second exception provides that a foreign state will not be immune from the court's jurisdiction if the case "is based

- 9 -

upon a commercial activity carried on in the United States by the
foreign state; or upon an act performed in the United States in
connection with a commercial activity of the foreign state
elsewhere . . . ."  28 U.S.C. § 1605(a)(2).  A "commercial
activity" is defined as "either a regular course of commercial
conduct or a particular commercial transaction or act."  28
U.S.C. § 1603(d).  In determining whether an activity is
commercial, "the issue is whether the particular actions that the
foreign state performs (whatever the motive behind them) are the
type of actions by which a private party engages in 'trade and
traffic or commerce.'"  Princz, 26 F.3d at 1172 (quoting Republic
of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)).

        As best as can be discerned from plaintiff's filings,
plaintiff alleges that the Consulate of Venezuela wrote a letter,
using plaintiff's name, that somehow related to allowing
plaintiff to travel to Thailand.   (See Pl.'s Special Damages
Pleading at 4-5; Mot. for Subpoena at 1,3.)   Plaintiff makes no
allegations of fact which show that the defendant's letter
related to its commercial activity or constituted a regular
course of conduct or act that is carried on by private parties
engaged in commerce.  Cf. Malewicz v. Amsterdam, 362 F. Supp. 2d
298, 314 (D.D.C. 2005)(holding that the city of Amsterdam engaged
in "commercial activity" within the meaning of the FSIA when it

- 10 -

loaned artworks to U.S. museums, since potential sale of work was
contemplated by the parties).

III. RIGHTS IN PROPERTY EXCEPTIONS, 28 U.S.C. §§ 1605(a)(3), (4)

     Under the third exception, a foreign state will not be
immune from this court's jurisdiction if the plaintiff's case is
one "in which rights in property taken in violation of
international law are in issue and that property or any property
exchanged for such property is present in the United States in
connection with a commercial activity carried on in the United
States by the foreign state . . . ."  28 U.S.C. § 1605(a)(3).
Under the fourth exception, a foreign state does not have
immunity for cases involving "rights in property in the United
States acquired by succession or gift or rights in immovable
property situated in the United States . . . ."  28 U.S.C.
§ 1605(a)(4).

     Plaintiff's complaint alleges no facts regarding a taking of
property.  In subsequent filings, plaintiff does allude to
defendant's "plans to steal [his] money" and defendant's
involvement in an alleged "conspiracy agreement to steal [the]
money he was using for religious Christian ministry purposes in
Thailand . . ." but does not allege that any of his money or
property has actually been stolen, that property was taken in
violation of international law, or that such property is present
in the United States in connection with commercial activity

carried on by the Embassy of Venezuela.  (Pl.'s Special Damages
Pleading at 6.)  Nor has plaintiff alleged any facts relating to
property rights acquired by succession or gift, or rights in
immovable property.

IV.  NONCOMMERCIAL TORT EXCEPTION, 28 U.S.C. § 1605(a)(5)

        The fifth exception denies immunity to a foreign state in a
case in which money damages are sought against a foreign state
for personal injury or death, or for damage to or loss of
property, occurring in the United States and caused by a tortious
act or omission of the foreign state, or an official or employee
of that state.  28 U.S.C. § 1605(a)(5).  Claims arising out of
malicious prosecution, abuse of process, libel, slander,
misrepresentation, deceit, or interference with contract rights
do not provide exceptions to immunity.  28 U.S.C.
§ 1605(a)(5)(B).

        Plaintiff's complaint alleges nothing more than that
defendant used plaintiff's name in a letter.  In subsequent
filings, however, plaintiff suggests that defendant's use of his
name in a letter violated plaintiff's "interests of privacy."
(Mot. of Pl. Pleading, Ex. D.)  Specifically, plaintiff claims
that the defendant violated his privacy interest by
(1) appropriating his name or likeness for the defendant's
benefit, (2) intruding upon his solitude or seclusion, (3)
publicly disclosing private information, and (4) placing him in a

false light in the public's eye.  (Br. on P. & A. at 6.)  To the
extent that plaintiff's claim is one for defamation, libel, or
slander, defendant is immune from suit pursuant to the FSIA.  <u>See</u>
28 U.S.C. § 1605(a)(5)(B); <u>see also</u> <u>Ortega Trujillo v. Banco</u>
<u>Central Del Ecuador</u>, 17 F. Supp. 2d 1340, 1344-45 (S.D. Fla.
1998)("Courts have consistently afforded literal interpretation
to the 1605(a)(5)(B) bar on defamation claims against foreign
sovereigns and their agents.").

Furthermore, section 1605(a)(5)(A) also bars tort claims
"based upon the exercise or performance or the failure to
exercise or perform a discretionary function regardless of
whether the discretion be abused . . . ."  28 U.S.C.
§ 1605(a)(5)(A).  Here, it may be that defendant's alleged act of
including plaintiff's name in a letter was the performance of a
discretionary function for which defendant is immune from suit.
However, this question need not be resolved, for plaintiff's tort
claims would not survive a motion to dismiss pursuant to Rule
12(b)(6) for failure to state a claim.  <u>See</u> <u>Baker v. Dir., United</u>
<u>States Parole Comm'n</u>, 916 F.2d 725, 726-27 (D.C. Cir. 1990) (per
curiam)(upholding district court's *sua sponte* dismissal for
failure to state a claim pursuant to Rule 12(b)(6) "[b]ecause it
is patently obvious that [the *pro se* plaintiff] could not have
prevailed on the facts alleged in his complaint").

- 13 -

In the District of Columbia, courts have adopted the definition of the tort of appropriation as set forth in Section 652C of the Restatement (Second) of Torts. <u>Tripp v. United States</u>, 257 F. Supp. 2d 37, 40-41 (D.D.C. 2003); <u>see</u> <u>Vassiliades v. Garfinckel's</u>, 492 A.2d 580, 592 (D.C. 1985).  A defendant is liable for the tort of appropriation of name or likeness if the defendant "'appropriates to his own use or benefit the name or likeness of another.'"  <u>Tripp</u>, 257 F. Supp. 2d at 40-41 (quoting Restatement (Second) of Torts § 652C).  "Incidental use of name or likeness or publication for a purpose other than taking advantage of a person's reputation or the value associated with his name will not result in actionable appropriation."  <u>Vassiliades</u>, 492 A.2d at 592.  "The value of a plaintiff's name is not appropriated by mere mention of it . . . ."  <u>Tripp</u>, 257 F. Supp. 2d at 41 (internal quotation marks omitted).  Here, neither plaintiff's complaint nor any of his subsequent filings allege any facts suggesting that defendant used plaintiff's name to take advantage of his reputation or other value of his name.  Thus, plaintiff's claim of misappropriation would not survive a motion to dismiss for failure to state a claim.

Plaintiff also has not stated a claim for "intrusion upon seclusion."  In <u>Wolf v. Regardie</u>, the District of Columbia Court of Appeals adopted Section 652B of the Restatement (Second) of Torts (1977) and its definition of a tort for "intrusion upon

- 14 -

seclusion": "One who intentionally intrudes, physically or
otherwise, upon the solitude or seclusion of another or his
private affairs or concerns, is subject to liability to the other
for invasion of his privacy, if the intrusion would be highly
offensive to a reasonable person."  553 A.2d 1213, 1217 (D.C.
1989).  Some of the circumstances in which the tort of intrusion
upon seclusion could arise include harassment, peeping through
windows, eavesdropping on private conversations, entering a
person's home without permission, or secretly searching a
person's belongings.  Id. at 1217-18; see also Helton v. United
States, 191 F. Supp. 2d 179, 181 (D.D.C. 2002).  Here,
plaintiff's allegations that defendant used plaintiff's name in a
letter nowhere allege that defendant has intentionally intruded
upon plaintiff's seclusion or intruded upon him in a way that
would be "highly offensive to a reasonable person."  Although
plaintiff asserts that a privacy interest has been violated, he
alleges no facts to support such an assertion.

To succeed on a claim for public disclosure of private
information, a plaintiff must establish that "the matter
published is of a kind that (a) would be highly offensive to a
reasonable person, and (b) is not of legitimate concern to the
public."  Wolf, 553 A.2d at 1220.  "The tort is generally
considered as having five constituent elements: (1) publicity,
(2) absent any waiver or privilege, (3) given to private facts

- 15 -

(4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." Id.  Again, all plaintiff has alleged here is that defendant used plaintiff's name in a letter.  Plaintiff has alleged no facts to support the elements of this privacy tort claim.

"To prevail on a false light claim under District of Columbia law, appellant must show that (a) the published material places appellant in a false light which would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Weyrich v. New Republic, Inc., 235 F.3d 617, 628 (D.C. Cir. 2001) (internal quotation marks omitted).  Here, plaintiff has made no allegations that defendant, in its alleged letter, made false statements about plaintiff or used plaintiff's name in such a way as to place plaintiff's name in a false light.

Thus, even assuming plaintiff had sufficiently invoked the noncommercial tort exception to establish the court's jurisdiction over this action, plaintiff has not alleged sufficient facts for his tort claims to survive a motion to dismiss.[6]  See Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276

---

[6]  Plaintiff also implicates defendant in a conspiracy with other individuals, whom he alleges traveled to Thailand "to rid Plaintiff of all those of his Thai Families and added his

- 16 -

(D.C. Cir. 1994)(stating that the court "need not accept
inferences drawn by plaintiffs if such inferences are unsupported
by the facts set out in the complaint").

V.   ARBITRATION AWARDS EXCEPTION, 28 U.S.C. § 1605(a)(6)

Under the sixth exception, a foreign state will not be
immune from suit if the case is one in which a private party
seeks to "enforce an agreement made by the foreign state with or
for the benefit of a private party to submit to arbitration all
or any differences which have arisen or which may arise between
the parties with respect to a defined legal relationship . . . ."
28 U.S.C. § 1605(a)(6).  Since plaintiff's complaint and filings
do not allege violations pertaining to the enforceability of an
arbitration agreement, this exception is inapplicable here.

---

Malaysian Family especially his son, to date intentionally
murdering in the first degree . . . Plaintiff's Thai son . . .
beating his other 2 sons and raping his 3 ½ year old Thai
daughter."  (Pl.'s Special Damages Pl. at 7.)  He also claims
that "Defendant backed Thai Parties who maliciously planned to
kill Plaintiff and use assisted Thai State Action to do so while
Thai Parties were using U.S. $1 million of Plaintiff's money for
missionary causes . . . ."  (Mot. of Pl.'s Pleading Ex. F.)  To
the extent that these allegations could be construed as tort
claims against the defendant, the court lacks subject matter
jurisdiction over them as they are "'patently insubstantial,'
presenting no federal question suitable for decision." Best v.
Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994).  Claims are patently
insubstantial if they are "essentially fictitious," that is, if,
for example, they advance "bizarre conspiracy theories," or
allege "fantastic government manipulations of [one's] will or
mind."  See id.; see also Carone-Ferdinand v. CIA, 131 F. Supp.
2d 232, 234 (D.D.C. 2001); O'Connor v. United States, 159 F.R.D.
22, 25 (D. Md. 1994).  Plaintiff's conspiracy allegations are
bizarre and sound more in fiction than fact.

- 17 -

VI. "TERRORISM EXCEPTION," 28 U.S.C. § 1605(a)(7)

The last exception, which is commonly referred to as the
"terrorism exception," was enacted in 1996 as part of the
Antiterrorism and Effective Death Penalty Act ("AEDPA").
Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1028
(D.C. Cir. 2004).  Under this exception, a foreign state will be
subject to the court's jurisdiction if the suit is one

> in which money damages are sought against a foreign state
> for personal injury or death that was caused by an act of
> torture, extrajudicial killing, aircraft sabotage,
> hostage taking, or the provision of material support or
> resources . . . for such an act if such act or provision
> of material support is engaged in by an official,
> employee, or agent of such foreign state while acting
> within the scope of his or her office, employment, or
> agency . . . .

28 U.S.C. § 1605(a)(7).  A court will not exercise jurisdiction
over the suit, however, "if the foreign state was not designated
as a state sponsor of terrorism under section 6(j) of the Export
Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section
620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at
the time the act occurred . . . ."  28 U.S.C. § 1605(a)(7)(A);
Acree v. Republic of Iraq, 370 F.3d 41, 44 (D.C. Cir. 2004).

The terrorism exception is not applicable here because
Venezuela has not been designated as a state sponsor of
terrorism.  See § 1605(a)(7)(A); Acree, 370 F.3d at 44; Exports
of Agricultural Products, Medicines, and Medical Devices to Cuba,
Sudan, Libya, and Iran, 66 Fed. Reg. 36,683, 36,684 (July 21,

- 18 -

2001)(noting that the governments of Cuba, Sudan, Libya, and Iran have been designated as supporting international terrorism pursuant to section 6(j) of the Export Administration Act of 1979.); Defense Federal Acquisition Regulation Supplement, 67 Fed. Reg. 62,590, 62,608 (Oct. 7, 2002)(noting that the countries listed under the Export Administration Act of 1979 as of October 7, 2002 include: Cuba, Iran, Iraq, Libya, North Korea, Sudan, and Syria).

<u>CONCLUSION</u>

Plaintiff has failed to show that any of the exceptions to the general rule of foreign sovereign immunity under the FSIA apply in this case.  Therefore, this court lacks subject matter jurisdiction over plaintiff's action and the complaint will be dismissed.  A separate order accompanies this memorandum opinion.

SIGNED this 31st day of August, 2005.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge